IN THE UNITED STATES DISTRICT COURT
FOR THE WESTER DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNIFIRST CORPORATION, § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. __23-cv-95__ |
| § § | |
| JESSICA SALAS, § § | |
| Defendant. § | |

### UNIFIRST'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff UniFirst Corporation ("UniFirst") submits this Motion for Preliminary and Permanent Injunction enjoining Defendant Jessica Salas ("Salas") from pursuing arbitration on a class or collective basis of FLSA and related claims.

#### INTRODUCTION

UniFirst seeks to enjoin Salas from continued pursuit of class arbitration, and to compel her to comply with the parties' agreement to *individually* arbitrate employment disputes, including Salas's putative nationwide FLSA class action arbitration claim pending before the American Arbitration Association ("AAA").

Salas entered into the Employment and Restrictive Covenants Agreement with UniFirst, dated August 5, 2019 ("Agreement"), referenced in ¶ 10 and attached as Exhibit A to the Declaration of Denise Valentin-Diaz (attached as Exhibit 1). The Agreement calls for mandatory binding arbitration before the "American Arbitration Association ('AAA')" of "any claim" that "Employee may have against the Company" "arising from, or related to this Agreement or the Employee's employment with the Company," including but not limited to claims based on "exemption misclassification," "unpaid … overtime pay," and "the Fair Labor Standards Act."

Ex. 3, ¶ 11(a).  The Agreement further provides that the right to arbitration "shall be specifically enforceable … in court," that the court may issue "injunctive relief" for a "breach of this Agreement," and that "the court shall have the authority to decide issues of arbitrability and related procedural matters."   Ex. 3, ¶ 11(e), ¶ 15.

On September 13, 2022, Salas sued UniFirst in the United States District Court for the District of Massachusetts.  Ex. 2.  She asserted claims on behalf of herself and a putative nationwide class based on UniFirst allegedly "misclassif[ying]" them "as exempt from the overtime compensation requirements of the FLSA."  Ex. 2, ¶ 12.  On January 10, 2023, in reaction to UniFirst's anticipated motion to compel individual arbitration, Salas voluntarily dismissed the federal case and filed a demand for class arbitration with the AAA.  Ex. 3.  This is a breach of the Agreement.

Because class arbitration is an issue of arbitrability for a Court to decide, not an arbitrator, UniFirst brings this action to judicially enforce its right to individual arbitration, including without limitation preliminary injunctive relief barring Salas from continuing to pursue class arbitration.

### ARGUMENT

UniFirst is entitled to injunctive relief pursuant to Federal Rule of Civil Procedure 65.  The Agreement expressly vests the Court with the authority to resolve issues of arbitrability, and there is no contractual basis to conclude that UniFirst consented to class arbitration.  Accordingly, UniFirst has established a likelihood of success on the merits.  Moreover, in the absence of injunctive relief, UniFirst will be irreparably harmed by submitting to an arbitrator's determination of a gateway issue for the Court.  Finally, the grant of injunctive relief will not harm Salas nor would it disserve the public interest.  Accordingly, as discussed further below, UniFirst has "clearly carried the burden of persuasion" on each of the four requirements to secure injunctive relief.  *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

I.  **UniFirst Will Prevail On The Merits.**

UniFirst is certain to prevail on the merits because Salas indisputably has initiated *putative class* litigation and now arbitration in violation of the Agreement which is enforceable in this Court.

A.  **Class Arbitration Is Not Authorized.**

Class or collective arbitration is foreclosed because the Agreement does not "affirmative[ly]" provide a contractual basis for concluding UniFirst agreed to submit to it. *Lamps Plus v. Varela*, 139 S. Ct. 1407, 1416 (2019) (neither "silence" nor "ambiguity" will do); *see also Stolt-Nielsen v. AnimalFeeds Int'l*, 559 U.S. 662, 684 (2010) ("parties' mere silence on the issue of class-action arbitration" does not indicate "consent to resolve their disputes in class proceedings").

The requisite affirmative agreement to class arbitration cannot be teased out of any "ambiguity" arising from, among other things, the selection of arbitration tribunals.[1] *Lamps Plus*, 139 S. Ct. at 1417; *see also Dean v. Biggs & Greenslade*, No. H-21-0242, 2021 WL 2002440, *5 (S.D. Tex. May 19, 2021) ("Because the [agreement] is silent as to whether class claims should be arbitrated, classwide arbitration in this case is not appropriate," even though it "expressly incorporated" the AAA rules). This conclusion is reinforced by the Supplemental Rules themselves, which denounce using the "existence of these Supplementary Rules, or any other AAA rules" as "a factor either in favor of or against permitting the arbitration to proceed on a class basis." Supplementary Rules, §3; *see also Marbaker v. Statoil USA Onshore Props., Inc.*, 801

---

[1] One of the ambiguities the majority assumed existed was the selection of arbitral forums "which furnish rules for arbitrators to conduct class proceedings," including the "American Arbitration Assn., Supplementary Rules for Class Arbitrations." *Lamps Plus*, 139 S. Ct. at 1429 (dissent).

Fed. Appx. 56, 62 (3d Cir. 2020) (refusing to infer consent at the clause construction stage even where the agreement explicitly incorporates the AAA's Supplementary Rules).

Nor can the requisite "affirmative" agreement to class arbitration be teased out of any "ambiguity" arising from:

- broad descriptions of the claims to be arbitrated, *e.g.*, "all disputes, claims or controversies;"
- the breadth of proceedings arbitration replaces, *e.g.*, "in lieu of any and all lawsuits or other civil legal proceedings," or
- the array of relief the arbitrator may award, *e.g.*, "any remedy allowed by applicable law."

*Lamps Plus*, 139 S. Ct. 1407, 1416-17.

In sum, nowhere in the Agreement does UniFirst express an intent to arbitrate claims on a class basis. And, under Texas law, with the added gloss of the FAA, such an agreement may not be implied from reference to the AAA rules. *See, e.g., Robinson v. Home Owners Mgmt. Enters., Inc.*, 549 S.W.3d 226, 240 (Tex. App.—Fort Worth 2018), *aff'd*, 590 S.W.3d 518 (Tex. 2019) (explaining that "Texas courts will look beyond a written agreement to imply some unexpressed term (such as, for example, an agreement to arbitrate class claims) *only in the rarest of circumstances*") (emphasis added).[2]

For all these reasons, class arbitration plainly is foreclosed by the Agreement.

---

[2] Cases involving review of an arbitrator's class determination are decided under a highly deferential standard, without regards to the correctness of the arbitrator's construction of the agreement, and therefore, have no bearing in this case. *See, e.g., Sun Coast Res., Inc. v. Conrad*, 956 F.3d 335, 338 (5th Cir. 2020) ("[W]hatever the merits of the arbitrator's analysis here, it is enough that he 'focused on the arbitration clause's text, analyzing (whether correctly or not makes no difference) the scope of both what it barred from court and what it sent to arbitration.'") (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. at 568 & n.1 (2013)).

### B. Class Arbitrability Is An Issue For This Court.

The issue of class arbitration is a question to be decided by this Court, not the arbitrator. There is no delegation of class arbitrability absent an affirmative delegation in clear and unmistakable contract language. *See Lamps Plus*, 139 S. Ct. at 1417 ("Although parties are free to authorize arbitrators to resolve such questions, we will not conclude that they have done so based on 'silence or ambiguity' in their agreement …"); *20/20 Commc'ns v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019) ("class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary"). There is no such delegation.

To the contrary, the Agreement clearly and unmistakably provides the precise opposite. It provides that the arbitration clause "shall be specifically enforceable … in court and the court shall have the authority to decide issues of arbitrability and related procedural matters." Ex. 1A, ¶ 11(e). It provides for "injunctive relief" in "court" for a "breach of this Agreement." Ex. 1A, ¶ 11(e), ¶ 15. The parties' agreement to reserve arbitrability to the courts is enforceable as written. *See Lamps Plus*, 139 S. Ct. at 1417 n. 4 (2019) (class arbitrability is for the courts where the "parties agreed that a court, not an arbitrator" would decide questions of arbitrability).

Especially in the face of this express non-delegation language, no clear and unmistakable delegation of arbitrability issues can be teased out of the Agreement's selection of the AAA rules. The AAA Supplementary Rules for Class Arbitrations[3] ("Supplementary Rules") "apply" whenever "any of the rules of the [AAA]" are selected and "govern" in the case of any "inconsistencies" with "other AAA rules." Supplementary Rules, § 1(a) and (c). The Supplementary Rules only *reinforce* the parties' right to have the issue of class arbitrability decided by a court. They expressly provide that, when a party first looks to the courts for relief,

---

[3] *See* https://www.adr.org/sites/default/files/Supplementary_Rules_for_Class_Arbitrations.pdf.

the arbitrator shall defer to the court's decision. Supplementary Rules, § 1(c) ("[w]henever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court"). Far from creating an ambiguity by conflicting with the Agreement, the Supplementary Rules clearly leave the parties room to reserve class arbitrability to the courts in the first instance.[4] And even if it did, ambiguity would not be enough even if the Agreement were silent on delegation (which it is not). *Lamps Plus*, 139 S. Ct. at 1417 ("'silence or ambiguity'" will not do).

Even if there were ambiguity, and even if *Lamps Plus* did not reject using ambiguity to delegate arbitrability, under settled rules of interpreting the incorporation of AAA's general rules would not override the Agreement's specific non-delegation provisions. *See Pathfinder Oil & Gas v. Great Western Drilling*, 574 S.W.3d 882, 889 (Tex. 2019) ("specific contract provision controls over a general one"); *Hawkins v. El Paso First Health Plans*, 214 S.W.3d 709, 724 (Tex. App. 2007) ("broad statement" in "standard from contract with all managed care providers" is "controlled by the more narrow provision in" the "specific contract" between just the parties); *McCreary v. Bay Area Bank & Trust*, 68 S.W.3d 727, 731-32 (Tex. App. — Houston [14th Dist.] 2001, pet. dism'd) (terms in typed addendum attached to generic printed contract are more "specific" than and govern over conflicting terms of the latter).

This case does not present the issue raised but left undecided in *Sun Coast Resources v. Conrad*, 956 F.3d 335, 338 (5th Cir. 2020). There the court suggested in dicta that the "clear and unmistakable" hurdle might be cleared by incorporation of AAA rules *combined with* an express

---

[4] Even where the parties do not *first* seek a court's ruling on class arbitrability, the arbitrator may not decide to proceed on a class basis until the parties have an opportunity to ask a court to ultimately decide the question. Supplementary Rules, § 3 ("arbitrator shall stay all proceedings … to permit any party to move a court" to decide whether the "arbitration clause permits the arbitration to proceed on behalf of or against a class").

delegation to the arbitrator of "any dispute concerning … arbitrability." *Id*., at 338.  But the court ultimately did "not reach the issue" because it had been waived by conduct in the arbitration.  *Id*. The issue also need not be reached here since the Agreement expressly provides the exact opposite.

**\*\*\***

In sum, UniFirst is certain to prevail in this Court on Salas's contractual obligation to arbitrate her claims on an individual basis.  There is no clear and unmistakable affirmative agreement to class arbitration.  Nor is there a clear and unmistakable delegation of arbitrability to the arbitrators.  There is, in fact, a clear and unmistakable agreement precisely to the contrary. UniFirst is entitled to enforce its right to individual arbitration.

## II.     UniFirst Will Be Irreparably Harmed.

As an initial matter, the harm to UniFirst would be "*per se* irreparable" if the arbitrator were permitted to determine the issue of class arbitrability. *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990) *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002).[5]  To the extent UniFirst is forced to proceed with class arbitration, even temporarily, it will be forever deprived of its bargained for right to individual arbitration, including, for example, being forced to provide notice to its employees that there is an arbitration and an option to participate, to engage in class discovery, etc.  It will thereby have lost the benefits of individual arbitration to which it is entitled, including the "lower costs, greater efficiency and

---

[5] *See also Kellogg Brown & Root Servs., Inc. v. Altanmia Com. Mktg. Co. W.L.L.*, No. CIV.A. H-07-2684, 2007 WL 4190795, at \*16 (S.D. Tex. Nov. 21, 2007) ("In light of Fifth Circuit precedent establishing that a court cannot compel a party to arbitrate unless the court determines that the party agreed to arbitrate, KBR has shown that it will suffer irreparable harm if it must arbitrate nonarbitrable disputes and seek redress later. The fact that KBR might able to collaterally challenge an award resolving nonarbitrable claims does not remedy the harm caused by requiring it to arbitrate claims under a Subcontract that does not require binding arbitration.").

speed." *Stolt-Nielsen*, 559 U.S. at 685. Such harm is irreparable and warrants preliminary injunctive relief for the brief time it will take the Court to decide the issues of arbitrability. *See UBS Sec., LLC v. Voegeli*, 405 Fed. Appx. 550, 552 (2d Cir. 2011) ("Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law").[6]

### III. Balance of Harm

Salas will suffer no significant harm if the Court grants a preliminary injunction because granting the requested injunctive relief does not prevent Salas from arbitrating her individual claims pursuant to the parties' Agreement. *See Kellogg Brown & Root Servs., Inc. v. Altanmia Com. Mktg. Co. W.L.L.*, No. CIV.A. H-07-2684, 2007 WL 4190795, at *16 (S.D. Tex. Nov. 21, 2007) (balance of hardship weighed in favor of injunctive relief where granting the requested injunctive relief "neither implicate[d] nor limit[ed] the arbitrator's authority to hear and decide the issues that the parties have agreed to arbitrate."). At worst Salas will be temporarily *delayed* in providing a platform for *other people* to pursue claims that they are *entirely free* to pursue without her.

### IV. Public Interest

Finally, an injunction will not disserve the public interest. To the contrary, the public interest strongly supports the enforcement of agreements to arbitrate according to their terms. *See* 9 U.S.C. § 4 ("court shall make an order directing the parties to proceed to arbitration in accordance

---

[6] Although UniFirst intends to advise the AAA of the present request for judicial review, which will result in a suspension of the arbitration, such a stay of arbitration will only last for 60 days. *See* Rule 1 of AAA Employment Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf. Accordingly, preliminary injunctive relief is still required here, and the absence of such will result in irreparable harm to UniFirst.

8

with the terms of the agreement"); *AT&T Mobility, LLC v. Conception*, 563 U.S. 333, 339 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced *according to their terms*.") (quotations and brackets omitted, emphasis added). An injunction preventing Salas from pursuing her claims on a class basis would effectuate the parties' agreement without treading on the arbitrator's authority to decide the disputes the parties have agreed to submit to him. Accordingly, the public interest strongly weighs in favor of the injunctive relief sought by UniFirst.

## CONCLUSION

For the foregoing reasons the Court should grant UniFirst's motion and enter orders:

1. Preliminarily staying and enjoining Salas, pending final resolution of this case, from pursuing or continuing to pursue arbitration of her FLSA and any related claims on a joint, class or collective basis or otherwise together with or on behalf of or for the benefit of anyone other than Salas herself;

2. Preliminarily enjoining the arbitration of Salas's claims at the American Arbitration Association on a class or collective basis;

3. Permanently enjoining Salas from pursuing or continuing to pursue arbitration of her FLSA and any related claims on a joint, class or collective basis or otherwise together with or on behalf of or for the benefit of anyone other than Salas herself; and

4. Compelling Salas to individually arbitrate her claims against UniFirst.

| | |
|---|---|
| January 25, 2023 | Respectfully submitted,<br><br>UNIFIRST CORPORATION,<br><br>By:/s/ Lawrence D. Smith<br><br>Lawrence D. Smith<br>State Bar No. 18638800<br>OGLETREE, DEAKINS,<br>NASH, SMOAK & STEWART, P.C.<br>112 East Pecan Street, Suite 2700<br>San Antonio, TX 78205<br>210-354-1300 – Telephone<br>210-277-2702 - Facsimile<br>larry.smith@ogletree.com<br><br>Thomas A. Lidbury (IL 6211158)<br>Zachary A. Pestine (IL 6324485)<br>OGLETREE, DEAKINS, NASH,<br>SMOAK & STEWART, P.C.<br>155 North Wacker Drive, Suite 4300<br>Chicago, IL 60606<br>312-558-1230 – Telephone<br>312-807-3619 – Facsimile<br>thomas.lidbury@ogletree.com<br>312-558-1242 – Telephone<br>312-807-3619 – Facsimile<br>zac.pestine@ogletree.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that I will serve a copy of the foregoing on Defendant Jessica Salas pursuant to Federal Rule of Civil Procedure 4 along with the underlying complaint. I have also provided a courtesy copy via-email of this motion to Salas's attorneys of record in the underlying AAA action.

*/s/ Lawrence D. Smith*
Lawrence D. Smith